OPINION
{¶ 1} John Scurlock appeals from his conviction in the Clark County Common Pleas Court of one count of rape with a specification of the use of force pursuant to his guilty plea. Five other counts of rape in the indictment were dismissed pursuant to plea negotiations.
 {¶ 2} In his first assignment of error, Scurlock contends his conviction should be set aside because the trial court failed to advise him that it could proceed to immediately sentence him upon receiving his guilty plea as required by Crim.R. 11(C)(2). The State argues that any error in the Crim.R. 11 advice was harmless because Scurlock knew the only sentence he could receive was life in prison with parole eligibility after ten years incarceration.
 {¶ 3} The following occurred in open court at the time Scurlock entered his guilty plea to the reduced charge:
 {¶ 4} "MR. RASTATTER: Thank you, Your Honor.
 {¶ 5} "Your Honor, those two case numbers have been consolidated for purposes of trial into one case. The State of Ohio at this time would move the Court to dismiss count two in case number 01-442 and also we would move the Court to dismiss all four counts in case number 01-CR-457. We would do that conditioned upon the Defendant pleading guilty to count one in 01-CR-442, that being a charge of rape as a felony of the first degree with a specification that the offender purposely compelled the victim to submit by force or threat of force. The sentence for a conviction on count one is a mandatory life sentence with parole eligibility after ten years, and because of that there are no other terms of the negotiated plea. Both parties understand that that is the mandatory sentence.
 {¶ 6} "I can state the facts of the case if the Court is prepared for me to do that.
 {¶ 7} "THE COURT: Proceed.
 {¶ 8} "MR. RASTATTER: Your Honor, some point in time between September 2nd of 1996 and September 1 of 1997, some point in time during that year, most likely during the fall of 1996, the Defendant was living at the Executive Inn, 325 West Columbia Street in Springfield, Clark County, Ohio with his biological daughter, [L.S]., who at that point in time was under the age of thirteen, specifically she was twelve.
 {¶ 9} "During their time at the Executive Inn, the Defendant did engage in vaginal intercourse with the victim, that act in and of itself constituted statutory rape. The facts also suggest that the Defendant compelled the victim to submit by force or threat of force, and that's the basis for the specification."
 {¶ 10} Scurlock was present during the prosecutor's remarks and he told the court that he had signed a written plea of guilty with a full understanding of its contents. (Tr. 7). The court then proceeded to accept Scurlock's guilty plea in compliance with the provisions of Crim.R. 11. (See Tr. 12-22). Scurlock was specifically informed that the only penalty allowed for the offense to which he was entering a guilty plea was life imprisonment with parole eligibility in ten years. (Tr. 15). The court asked Scurlock's counsel after the plea was entered if there was any reason why the court should not dispose of the case immediately and Scurlock's counsel responded there was not. (Tr. 22). Scurlock interposed no objection to the court immediately proceeding to the sentencing before it was imposed or thereafter.
 {¶ 11} Crim.R. 11(C)(2) provides in part that "[i]n felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all the following:
 {¶ 12} "(b) Informing the defendant * * * that the court, upon acceptance of the plea, may proceed with judgment and sentence * * *."
 {¶ 13} The trial court failed to comply with the Criminal Rule but we agree with the State that the error was harmless because Scurlock could not entertain any doubt that the mandatory sentence would be imposed immediately. There was no purpose to be served in having a pre-sentence investigation conducted because the court had no option but to proceed to impose the mandatory sentence. The first assignment of error is overruled.
 {¶ 14} In his second assignment, Scurlock contends the trial court erred in failing to tell him of his right to appeal. We agree with the State that Scurlock suffered no prejudice with the trial court's error as we granted him leave to appeal his conviction. The second assignment of error is overruled.
 {¶ 15} In his third assignment, Scurlock argues that the trial court failed to advise him properly of the post-release control provisions of R.C. 2967.28. The State argues that any misstatement by the trial court in providing the notice to Scurlock about post-release control was harmless error because Scurlock will never be on post-release control.
 {¶ 16} Scurlock was informed by the trial court that if he were released on parole and violated parole conditions, the parole authority could put him back in jail for the remainder of the original prison term imposed by the court. (Tr. 19).
 {¶ 17} In Woods v. Telb (2000), 89 Ohio St.3d 504, the Ohio Supreme Court held that pursuant to R.C. 2967.28(B) and (C) a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence. The court noted that because the record clearly indicated that defendant Woods was advised of discretionary post-release control both in his signed plea form and in his sentencing entry, the court could find no violation of the separation of powers doctrine.
 {¶ 18} In his plea form, Scurlock was informed that a period of supervision by the Adult Parole Authority after release from prison was mandatory. He was informed of the consequences of violating the terms of his post-release control as well. The sentencing entry also reflected that Scurlock was informed that post-release control was mandatory and of the consequences for violating its conditions. The sentencing entry also
made clear to Scurlock that post-release control was part of his sentence. The court also specifically told Scurlock at the time of the plea that Scurlock could spend the rest of his life in prison if he violated the terms of his post-release control.
 {¶ 19} Scurlock argues that the trial court misstated the law in regard to post-release control. (See his brief at page 6). He fails to tell us in what respects the trial court misstated the law and how he was prejudiced thereby. The appellant's third assignment of error is overruled.
 {¶ 20} In his fourth assignment, Scurlock argues that the trial court erred to his prejudice by telling him he could be fined $25,000 for the first degree felony when the maximum fine by law is only $20,000. We fail to see how the error by the trial court prejudiced Scurlock in any way. This assignment is likewise overruled.
 {¶ 21} In his fifth assignment, Scurlock argues that the trial court erred in not referring him for a competency evaluation in light of his remarks to the court on the day he entered his guilty plea.
 {¶ 22} On November 5, 2001, defendant appeared in court with counsel for a change of plea hearing. While the court was addressing defendant about the implications of entering a plea of guilty, the following discussion took place (11-5-01 T. p. 7-9):
 {¶ 23} "THE COURT: Are you under the influence of alcohol, drugs or medication today?
 {¶ 24} "MR. SCURLOCK: Yes, my — just my regular brain medication. No, Your Honor.
 {¶ 25} "THE COURT: It doesn't affect your ability to understand what is going on?
 {¶ 26} "MR. SCURLOCK: No, Your Honor.
 {¶ 27} "THE COURT: I have in front of me a written plea of guilty, is this your signature on the third page, sir?
 {¶ 28} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 29} "THE COURT: Before you signed this document, did you read it and go over it with your attorney?
 {¶ 30} "MR. SCURLOCK: Yes, sir.
 {¶ 31} "THE COURT: Did you understand everything in the document?
 {¶ 32} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 33} "THE COURT: You have gone over this case and your possible defenses with your attorney?
 {¶ 34} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 35} "THE COURT: Are you satisfied with the advice and representation your attorney has given you?
 {¶ 36} "MR. SCURLOCK: No, Your Honor.
 {¶ 37} "THE COURT: Excuse me?
 {¶ 38} "MR. SCURLOCK: No.
 {¶ 39} "THE COURT: No. All right.
 {¶ 40} "MR. SCURLOCK: Can I possibly say something to you, Your Honor? Usually I'm scared and shaking and everything like I am, if you would give me the permission. October the13th last year I sustained a serious head injury and I have been on medication since then. Now at this time the allegations of a confession — I have had a serious problem with alcohol and downers, drugs, and when I sobered up and realized what was going on, that wasn't me. Although it is on the screen, that wasn't me that was confessing to this, it wasn't at all. And I am requesting a psychological evaluation, please. It was a subdural hematoma in the craniotomy. I almost lost my life. (11-5-01 T. p. 7-9).
 {¶ 41} "THE COURT: Mr. Scurlock, when you indicated you seen yourself on the screen or when you — what you saw on the screen wasn't you, are you referring to the videotape of your statement?
 {¶ 42} "MR. SCURLOCK: That was me, but that actually wasn't what I —
 {¶ 43} "MR. COURT: I'm just asking if you are referring to the videotape of your statement?
 {¶ 44} "MR. SCURLOCK: Yes. The person on the screen, is that what you are saying?
 {¶ 45} "THE COURT: I haven't seen any screen, sir, I'm asking if you are referring to a videotape of a statement you made?
 {¶ 46} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 47} "THE COURT: And you are telling me that at this time while that might be you that was being videotaped, that you did not understand what was going on at that time?
 {¶ 48} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 49} "THE COURT: Did you discuss this with your attorney?
 {¶ 50} "MR. SCURLOCK: Yes, Your Honor. He told me that was the strong evidence that was against me.
 {¶ 51} "THE COURT: I've gone through the files, I find no motion in regard to the admissibility of that statement, Mr. Morris, was there any filed?
 {¶ 52} "MR. MORRIS: No, Your Honor.
 {¶ 53} "THE COURT: The Court will not accept a plea under these circumstances.
 {¶ 54} "MR. MORRIS: Thank you.
 {¶ 55} "THE COURT: I will suggest that some work be done on the Defendant's request to have his status evaluated as to his ability to give such a statement.
 {¶ 56} "That's all, gentlemen.
 {¶ 57} "MR. SCURLOCK: Thank you, Your Honor.
 {¶ 58} "(Whereupon at 2:45 o'clock p.m. the hearing was adjourned)
 {¶ 59} "THE COURT: I have been asked to come back into the courtroom to recall the case 01-CR-442 and consolidate with CR-457.
 {¶ 60} "Mr. Scurlock, a few minutes ago you told me that you do not think that the statements that you gave to the detectives or the officers in regard to this case were valid statements because you were not capable of understanding what was going on because of some brain damage. Which raises the issue of whether or not you have had effective assistance of counsel, because there was no motion to suppress that statement filed. Under those circumstances I will not accept a plea because all we will be doing is waiting for the appeal on ineffective assistance of counsel. You understand why I stopped taking the plea when I did, sir? You told me you were not satisfied with the representation you received from your attorney, and when I inquired as to that you raised this issue about the statement. So it seems you understand the importance of the statement. And you understand the issues about why that statement should or should not be allowed to be entered into evidence against you. If your attorney has not discussed this with you, sir, how did you know about this?
 {¶ 61} "MR. SCURLOCK: It was with the evaluation to erase that and go ahead with the plea of guilty.
 {¶ 62} "THE COURT: How did you know about this issue, sir?
 {¶ 63} "MR. SCURLOCK: Just him representing me, sir, forgetting about different things we discussed.
 {¶ 64} "THE COURT: You did go over this with your attorney?
 {¶ 65} "MR. SCURLOCK: Yes.
 {¶ 66} "THE COURT: Did you go over all of your possible defenses with your attorney?
 {¶ 67} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 68} "THE COURT: Are you telling me that at this time you are satisfied with the advice and representation your attorney has given you?
 {¶ 69} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 70} "THE COURT: Do you understand by pleading guilty you would waive any arguments that you might have regarding the admissibility of evidence?
 {¶ 71} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 72} "THE COURT: You would be admitting to the truth of the facts that the prosecutor put on record, you would be admitting that you committed this offense, the rape, to wit, to a child under the age of thirteen, with the specification you used force or threat of force in the commission of the offense. Do you understand that you would be admitting these things?
 {¶ 73} "MR. SCURLOCK: Yes, Your Honor.
 {¶ 74} "THE COURT: You would be telling the Court that you did these acts. Do you understand that?
 {¶ 75} "MR. SCURLOCK: Yes, Your Honor."
 {¶ 76} R.C. 2945.37(B) provides that in a criminal action in a court of common pleas, the court, the prosecutor or the defense may raise the issue of the defendant's competence to stand trial. A decision to conduct a competency hearing during the course of the trial is committed to the sound discretion of the trial court. State v. Berry (1995),72 Ohio St.3d 354. In determining whether to sua sponte conduct a competency hearing the trial court should consider the following factors: doubts expressed by defense counsel as to his client's competency, evidence of irrational behavior, and any prior medical opinions known to the court concerning the defendant's competency. Statev. Draught (1992), 76 Ohio App.3d 664.
 {¶ 77} A defendant is presumed competent to stand trial. R.C.2945.37(F) provides that the defendant shall not be found incompetent simply because he is mentally ill or because he is receiving psychotropic drugs or medication. We have held that taking prescriptions, medications, such as lithium for depression, does not itself render a defendant incompetent to stand trial. State v. Borchers (1995),101 Ohio App.3d 157. A defendant is competent to stand trial if he is capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. See, State v. Berry, supra.
 {¶ 78} In his statement to the court, Scurlock expressed concern that he was not himself when he gave a videotaped statement to the police. The docket and journal entries indicate Scurlock was arrested on July 10, 2001 and presumably his videotaped statement was obtained shortly thereafter. We must also assume that Scurlock's counsel reviewed the videotape and was satisfied that his client was competent to give a voluntary statement to the police. Scurlock was charged with six counts of raping his own daughter, but the State offered to dismiss five counts in exchange for Scurlock's plea to one count of rape. We are not privy to defense counsel's conversation with Scurlock, but after a brief recess, Scurlock indicated he was satisfied with his counsel's representation and was prepared to enter his plea to the reduced charge. There is nothing in the Crim.R. 11 colloquy on November 5, 2001 which indicates Scurlock was unable at that time to understand the nature of the proceedings or was unable to counsel with his lawyer. In short, Scurlock has failed to demonstrate that the trial court abused its discretion in not referring him for a competency evaluation before proceeding with the plea proceedings. The appellant's fifth assignment of error is overruled.
 {¶ 79} In his last assignment, Scurlock argues that the trial court erred in ignoring his assertions of innocence at the time he entered his guilty plea. Scurlock refers us to North Carolina v. Alford
(1970), 400 U.S. 25, wherein the United States Supreme Court upheld a defendant's guilty plea despite the defendant's protestation of innocence when the record supported the defendant's rational choice to enter that plea in the face of compelling evidence of his guilt.
 {¶ 80} In this case, Scurlock did not protest his innocence. He indicated he was not himself when he gave a statement to the police. Scurlock acknowledged that he understood that his guilty plea would be an admission that he raped his daughter. (Tr. 13). Scurlock did not enter anAlford plea and thus the Alford requirements need not have been met by the trial court. The last assignment of error is overruled.
 {¶ 81} The judgment of the trial court is Affirmed.
WOLFF, J., and YOUNG, J., concur.